# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2065

_____

United States of America,          *
                            *

          Appellee,      *

                            *   Appeal from the United States

   v.                    *   District Court for the

                            *   Western District of Missouri.

Bushwa Farmer,           *

                            *

          Appellant.     *

_____

Submitted:  September 10, 2002

Filed:  December 12, 2002

_____

Before WOLLMAN, HEANEY and BYE, Circuit Judges.

_____

HEANEY, Circuit Judge.

Bushwa Farmer was found guilty and convicted of one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced the defendant to ten years imprisonment on the firearm possession, including a sentence enhancement for obstructing justice because Farmer testified that he was not in possession of the firearm. We affirm the sentence, but remand the case for resentencing.

I.

On August 1, 1999, Farmer was arrested by Kansas City, Missouri Police for a hit and run accident. Following his arrest, police searched his car, and found a loaded semi-automatic handgun on the passenger seat, as well as a holster, a spare ammunition clip, and a gun cleaning tool. The gun was seized and sent to the crime lab, where it was logged into evidence. The traffic charges were resolved, but no charges were brought relating to the handgun. On October 15, 1999, forty days after the firearm was delivered to the crime lab, it was destroyed pursuant to what the government claims is Kansas City, Missouri Police Department policy.[1]

At some point thereafter, the Bureau of Alcohol, Tobacco, and Firearms joined the investigation. The ATF became involved through Project Felon, a program in Kansas City through which felons arrested within the city limits of Kansas City are charged in federal court rather than in city or state court. The ATF discovered that Farmer had sustained three prior felony convictions in Missouri, making him ineligible to possess a firearm.

On January 16, 2001, a federal grand jury returned a one-count indictment against Farmer for being a felon in possession of a firearm. Farmer was convicted, but the district court granted his motion for a new trial after it concluded the prosecution had elicited testimony from ATF Agent Randall Roberts that was more

---

[1]After reviewing Kansas City Police Department policies on-line, we could not determine which policy the government referred to here. There is a policy outlining destruction of firearms voluntarily turned into police, but no description of a general policy. See Procedural Instruction, Property Seizure and Forfeiture (Kansas City, Missouri, P.D., Jan. 31, 1991), available at http://www.kcpd.org/masterindex/Files/PI/PI9103.pdf; Memorandum No. 88-8: Firearms Violation Enforcement Project, (Kansas City, Missouri, P.D., Sept. 24, 1998), available at http://www.kcpd.org/masterindex/Files/Dm/DM%2088.pdf.

prejudicial than probative.[2] In the second trial, Farmer took the stand and testified on his behalf, stating he did not have a gun in his possession the night of August 1, 1999, nor did he see a gun, gun holster, spare ammunition clip, or gun cleaning kit in the car. Following the second trial, the jury convicted Farmer of being a felon in possession of a firearm.

In determining the appropriate sentence, the district court enhanced Farmer's offense level by two levels for Obstruction of Justice, pursuant to United States Sentencing Guidelines § 3C1.1. The court enhanced the sentence because it found that Farmer committed perjury when he testified that he was neither in possession of, nor aware of a firearm in the car. In total, Farmer was sentenced to 120 months in prison. The Appellant subsequently filed this timely appeal.

## II.

### A.

Farmer argues that he has been subjected to double jeopardy, in violation of his Fifth Amendment right against repeated prosecutions for the same offense. Relying on Oregon v. Kennedy, 456 U.S. 667 (1982), Farmer contends the new trial was the result of intentional misdeeds by the prosecution and therefore constitutionally barred. Id. at 679 (holding defendant may invoke the bar of double jeopardy if it is shown that the prosecution intended to provoke a mistrial).

There is no indication here that the government was attempting to derail the original trial. In fact, quite the opposite; the government won the first trial.

---

[2]Agent Roberts testified that Farmer was selling narcotics to children, when the prosecution claimed Agent Roberts was simply going to testify that the ATF believed Farmer dealt cocaine.

Appellant cites language by the prosecution that "there ain't no appeal from an acquittal" as demonstrative of the prosecutor's intent. As a colloquial phrase, we do not see any indication that the comment reflects specific prosecutorial strategy. Rather, it is a quip the prosecutor made before the bench. No double jeopardy problem is raised in this case.

B.

Farmer next raises the issue of whether the destruction of the firearm before trial violated his due process rights. Criminal defendants have the right to obtain from the prosecution evidence that is material to the guilt of the defendant. The prosecution cannot suppress material evidence. Brady v. Maryland, 373 U.S. 83, 87 (1963). To establish a Brady violation, the defendant must show the government suppressed evidence that was both favorable to the defense and material to the issue of guilt or punishment. United States v. Turner, 104 F.3d 217, 220 (8th Cir. 1997).

Appellant claims that the gun is exculpatory evidence for a number of reasons, most of which are without merit. One significant challenge raised by Farmer is the lack of fingerprinting conducted by the police on the gun. Without fingerprinting, Farmer alleges the government could not conclusively prove the firearm was his. Appellant successfully presented the fact that the gun had not been fingerprinted to the jury; yet, the jury found a link between Farmer and the firearm. We cannot conclude, therefore, that the government suppressed evidence that was favorable to the defendant and material to the issue of his guilt. There is no Brady violation.

C.

Appellant next argues that the government's eighteen-month delay in bringing the federal indictment resulted in a due process violation. In order to establish a due process violation for pre-indictment delay, a defendant must establish that substantial prejudice resulted from the delay, and that the delay was an intentional device to harass or gain a tactical advantage over the accused. United States v. Stierwalt, 16 F.3d 282, 285 (8th Cir. 1994). The handgun was discovered and seized on August 1, 1999, while the federal indictment was filed on January 16, 2001.

Objections to defects in indictments must be raised prior to trial. Fed. R. Crim. P. 12(b)(2). While we found no case law that considered whether delays in filing indictments constituted "defects" in the indictment, it is reasonable to interpret "defects in indictments" as including delays in bringing indictments. Appellant did not object to the delay until trial. Because the motion was untimely, we are not able to consider the merits of the claim.

D.

Appellant contends he had ineffective assistance of counsel at trial. To show ineffective assistance of counsel, a defendant must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that counsel's errors so prejudiced the defendant that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Guinan v. Armontrout, 909 F.2d 1224, 1228 (8th Cir. 1990) (quoting Strickland v. Washington, 466 U.S. 668, 687, 694 (1984)).

After carefully reviewing the record, we see no instances of serious error by counsel or prejudice warranting relief. Although Farmer switched counsel regularly, at no time does it appear that his counsel was "deficient," nor did any of the counsels' actions or alleged errors appear to have resulted in prejudice, depriving the defendant of a fair trial.

E.

Finally, Farmer challenges his two-level enhancement for obstruction of justice, arguing that the district court erred in finding that he committed perjury in his testimony during the second trial. During the second trial, Farmer testified for the first time, and stated that he was not in possession of the handgun, nor had he seen it. He was convicted again, but this time, pursuant to United States Sentencing Guidelines §3C1.1, the prosecution requested and the judge ordered a two-level enhancement to Farmer's sentence for obstructing justice by perjuring himself.

We review the district court's obstruction of justice enhancement for clear error. United States v. Hunt, 171 F.3d 1192, 1196 (8th Cir. 1999). Section 3C1.1 instructs judges to increase a convicted person's offense level by two levels if "the defendant willfully obstructed or impeded . . . the administration of justice during the course of the investigation [or] prosecution," and "the obstructive conduct related to . . . the defendant's offense of conviction." After a review of the evidence, the district court must make a finding of perjury by the preponderance of evidence. United States v. Thomas, 93 F.3d 479, 489 (8th Cir. 1996).

In finding that Farmer's testimony was untrue, the district judge stated:

> I suppose had the gun alone been found in Mr. Farmer's vehicle that a reasonable trier of fact might have concluded that someone tossed it in the car. But my recollection is that it was not just the gun there. It was also a gun cleaning kit. And it's extremely unlikely that someone would have disposed of a gun cleaning kit along with a gun on that evening. So I think that the enhancement for obstruction was properly calculated and I so find by a preponderance of the evidence.

(Sent. Tr. at 4.) The government failed to introduce the gun, the gun cleaning kit, the holster, the recovered ammunition, or the ammunition clip. The government did introduce an inventory report, but not the actual evidence. While we understand why the firearm was destroyed and therefore unavailable for introduction at trial, the government fails to explain why the other physical evidence was not introduced. We therefore are concerned the district judge relied upon evidence that was only introduced through a police inventory report in enhancing Farmer's sentence by two levels.

This enhancement would not have applied in the first trial. In neither trial did the government introduce direct evidence that would show Appellant perjured himself. We are uncomfortable with the district court approving a two-level enhancement for perjury when the government offered such scant evidence for the judge to rely upon in enhancing Farmer's sentence. We therefore remand this case for resentencing in regards to the 3C1.1 enhancement.

III.

We affirm the sentence except for the perjury finding against Bushwa Farmer at the sentencing hearing. We therefore remand for resentencing consistent with this opinion.

WOLLMAN, Circuit Judge, concurring in part and dissenting in part.

I concur in all but that portion of the court's opinion which sets aside the two-level enhancement for obstruction of justice based upon the district court's finding that Farmer had committed perjury.

In finding that Farmer's testimony was untrue, the district court stated:

> Evaluating the defendant's trial testimony in the light most favorable to the defendant, I do not believe that a reasonable trier of fact would have found that testimony to be true. One of the most problematic aspects of the testimony is Mr. Farmer's denial that he possessed the weapon as reflected in the transcript . . . . And I specifically find that that testimony was untrue.

The district court then continued with its recitation of its findings, as quoted by the court above. I am satisfied that the record supports the district court's finding that the preponderance of the evidence revealed that Farmer committed perjury. Although it would have been preferable for the government to produce the gun cleaning kit, I cannot fault the district court for relying upon the inventory report as support for its finding that Farmer lied when he denied that he had possessed the handgun.[3]

I would affirm the sentence as well as the conviction.

---

[3]Whether the gun cleaning kit was destroyed or misplaced, we do not know. See Kevin Peraino, *A Lot of Lost Causes*, Newsweek, Nov. 25, 2002, at 10. (Reporting on "numerous examples of flawed procedures and lost evidence" in the Kansas City Police Department.)

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.